## SOCIETY FOR SAVINGS IN THE CITY OF CLEVELAND v. BOWERS, TAX COMMISSIONER OF OHIO.

NO. 204.

Argued March 28, 1955.—Decided May 16, 1955.

*Robert F. Maskey* argued the cause for appellant in No. 204. With him on the brief were *David A. Gaskill* and *Edgar P. Stocker.*

*Robert G. Day* argued the cause and filed a brief for appellant in No. 220.

*Joseph S. Gill,* First Assistant Attorney General of Ohio, argued the cause for appellee. With him on the brief was *C. William O'Neill,* Attorney General.

*Solicitor General Sobeloff, Assistant Attorney General Holland, Ellis N. Slack* and *Hilbert P. Zarky* filed briefs for the United States, as *amicus curiae,* urging reversal.

MR. JUSTICE HARLAN delivered the opinion of the Court.

In 1829 this Court decided in *Weston* v. *City Council of Charleston,* 2 Pet. 449, that obligations of the Federal Government are immune from state taxation. This rule, aimed at protecting the borrowing power of the United States from state encroachment, was derived from the "Borrowing" and "Supremacy" Clauses of the Constitution,[1] and the constitutional doctrines announced in *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819). It was subsequently embodied in a succession of federal statutes, the existing statute being R. S. § 3701, 31 U. S. C. § 742.[2] The rule has been carried forward to embrace indirect taxation of such obligations through their inclusion in a tax imposed on all the property of a taxpayer. It is quite immaterial that the state tax does not discriminate against the federal obligations. *New York ex rel. Bank of Commerce* v. *Commissioners of Taxes,* 2 Black 620 (1863); *Bank Tax Case,* 2 Wall. 200 (1865); *Farmers & Mechanics Savings Bank* v. *Minnesota,* 232 U. S. 516 (1914); *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals,* 338 U. S. 665 (1950).

The two cases now before us involve the application of that rule, in a somewhat novel situation. Society for Savings in the City of Cleveland and First Federal Sav-

---

[1] Art. I, § 8, cl. 2; Art. VI, cl. 2.

[2] "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority."

ings and Loan Association of Warren,[3] two mutual savings banks having no capital stock or shareholders, and located in Ohio, attack the validity of an Ohio property tax, as assessed against them, on the ground that they were required to include in the property values upon which the tax was computed United States bonds held in their security portfolios. Had these bonds been excluded, the entire tax would have been wiped out in both instances.[4] The Ohio Tax Commissioner thought these government bonds were not excludible. The Ohio Board of Tax Appeals reversed. The Supreme Court of Ohio sustained the Commissioner in each instance. The two banks are here by appeal from the judgment of the Ohio Supreme Court in each case.[5] The cases were argued together, and are so treated in this opinion.

The tax in question was assessed in the names of these banks under §§ 5408, 5412 and 5638–1 of the Ohio General Code,[6] upon the book value of their "capital em-

---

[3] Society for Savings was incorporated under Ohio law, and First Federal under the Home Owners' Loan Act of 1933, as amended, 48 Stat. 128, 12 U. S. C. § 1461 et seq. Nothing turns here on the difference in their origins.

[4] In the view we take of this case, it is unnecessary to consider the taxable status of certain Federal Home Loan Bank stock owned by First Federal, which is also claimed to be exempt.

[5] 161 Ohio St. 122, 118 N. E. 2d 651 (1954); 161 Ohio St. 149, 118 N. E. 2d 667. We noted probable jurisdiction, 348 U. S. 807.

[6] "SEC. 5408. . . . All the shares of the stockholders in a financial institution, located in this state, incorporated or organized under the laws of the state or of the United States, the capital stock of which is divided into shares, excepting such as are defined as 'deposits' in section 5324 of the General Code, and all the shares of the stockholders in an unincorporated financial institution, located in this state, the capital stock of which is divided into shares held by the owners of such financial institution, and the capital employed, or the property representing it, in a financial institution the capital of which is not divided into shares, or which has no capital stock, located in

ployed, or the property representing it" (§ 5408) "at the aggregate amount of the capital, the surplus or reserve fund and the undivided profits" (§ 5412). The tax was at the rate of two mills on the dollar (§ 5638–1). No claim is made that the taxes constituted a franchise tax or some other kind of privilege tax. Cf. *Educational Films Corp.* v. *Ward,* 282 U. S. 379 (1931).

The Supreme Court of Ohio recognized that this tax, based as it was upon the inclusion of federal obligations, would have to fall if directed against the banks. *New York ex rel. Bank of Commerce* v. *Commissioners of*

---

this state, shall be listed and assessed at the book value thereof, and taxed in the manner provided in this chapter."

"SEC. 5412. . . . Upon receiving such report the tax commissioner shall ascertain and assess all the taxable shares of such financial institution, or the value of the property representing the capital employed by such financial institution, not divided into shares, at the aggregate amount of the capital, the surplus or reserve fund and the undivided profits as shown in such report, and the amount of taxable deposits of such institution in each county in which the institution maintained an office or offices for the receipt of deposits. Such amounts shall be assessed in the name of such financial institution excepting that the amounts of the taxable deposits wholly withdrawn from each such institution within the times mentioned in section 5411–2 of the General Code and separately set forth in such report shall be subtracted from the amount of taxable deposits so assessed and separately assessed in the names of such respective depositors. In the case of an incorporated financial institution all of whose shares constitute deposits as defined in section 5324 of the General Code such assessment of shares shall exclude the capital stock thereof as so shown but shall include the surplus or reserve and undivided profits so shown."

"SEC. 5638–1. . . . Annual taxes are hereby levied on the kinds and classes of intangible property, hereinafter enumerated, on the intangible property tax list in the office of the auditor of state and duplicate thereof in the office of treasurer of state at the following rates, to wit: . . . deposits, two mills on the dollar; shares in and capital employed by financial institutions, two mills on the dollar; . . . ."

*Taxes, supra; Bank Tax Case, supra.* This tax, though, was not considered to be against the banks. Holding that the depositors of a mutual savings bank have an interest similar to that of shareholders of other banks, the Ohio court found instead that the tax was imposed upon the "intangible property interests" of the depositors as the owners of each bank. The banks' capital, surplus fund and undivided profits, which we will refer to as their surplus, were regarded as not themselves the subject matter of the tax, but as simply the measure of the tax against the depositors, and the banks were treated as tax-collecting agents rather than as taxpayers.

In so deciding the Ohio court relied upon a gloss on the rule of immunity stated above. It has been held that a state may impose a tax upon the stockholders' interests in a corporation, measured by corporate asset values, without making any deduction on account of United States securities held by the corporation. This doctrine had its origin in cases involving national bank stock. There, congressional consent to state taxation of the stock of national banks, upon certain conditions, was held, over strong dissent, to permit such taxes to be assessed without the exclusion of federal obligations owned by the banks. *Van Allen* v. *Assessors,* 3 Wall. 573 (1866); *National Bank* v. *Commonwealth,* 9 Wall. 353 (1870); *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103 (1923). This result was reached in part on the theory that the stockholders' interests in a corporation represent a separate property interest from the corporation's ownership of its assets, so that a tax on the stockholders' interests is not a tax on the federal obligations which are included in the corporate property. This rationale has been carried over to cases involving stock of state-created banks, and thus a tax on their shareholders, though measured by corporate assets which include federal obligations, is held

not to offend the rule immunizing such obligations from state taxation. *Cleveland Trust Co.* v. *Lander,* 184 U. S. 111 (1902). Further, in levying a tax on shareholders, a state may require its payment by the corporation, as a collecting agent. *Corry* v. *Baltimore,* 196 U. S. 466 (1905). The result is that when, as is usually the case, the shareholder tax is measured solely by corporate asset values, such a tax is difficult to distinguish from a tax imposed upon the corporation itself, so far as the practical impact of the two types of taxes upon corporate-owned federal obligations is concerned. Nevertheless, this exception to the general rule of immunity is firmly embedded in the law.

The focal point of these appeals is thus whether we are to regard this tax as imposed on the banks or, as the Ohio court held the legislature intended, on their depositors. Were we free to construe Ohio's statute *de novo* we might have difficulty in reaching the conclusion which the Ohio court did. Suffice it to say at this point: The statute is barren of any language expressly imposing this tax on the depositors, and contains no provision giving the bank any right to recover the tax from the depositors, as might be expected if the bank had been regarded as a mere tax-collecting agent. By contrast, the taxes laid by the Ohio General Code on (a) the shares of incorporated financial institutions whose capital is divided into shares, (b) the shares of unincorporated institutions whose capital is divided into shares, and (c) deposits, are imposed on the shares "of the stockholders" (§ 5408) and on the deposits "as taxable property of its depositors" (§ 5673-2).[7] In the case of those taxes, not here involved, the bank is given full rights of reimbursement from the stockholders or depositors, as the case may be, and it is clear

---

[7] See note 8, pp. 149-150, *infra.*

that the institution in paying such taxes is acting only as a collection agent. Ohio Gen. Code §§ 5672, 5673, 5673–1, 5673–2.[8]

And beyond these considerations, one might not have expected the legislature to tax the ownership interests of the depositors of these banks on the same basis as stock-

---

[8] "Sec. 5672. . . . Taxes assessed on non-withdrawable shares of stock, of a financial institution, shall be a lien on such shares from the first day of January in each year until they are paid.

"It shall be the duty of every financial institution to collect the taxes due upon its shares of stock from the several owners of such shares, and to pay the same to the treasurer of state and any financial institution failing to pay the said taxes as herein provided, shall be liable by way of penalty for the gross amount of the taxes due from all the owners of the shares of stock, and for an additional amount of one hundred dollars for every day of delay in the payment of said taxes.

"Sec. 5673. . . . Such financial institution paying to the treasurer of state the taxes assessed upon its shares, in the hands of its shareholders respectively, as provided in the next preceding section, may deduct the amount thereof from dividends that are due or thereafter become due on such shares, and shall have a lien upon the shares of stock and on all funds in its possession belonging to such shareholders, or which may at any time come into its possession, for reimbursement of the taxes so paid on account of the several shareholders, with legal interest; and such lien may be enforced in any appropriate manner.

"Sec. 5673–1. . . . Taxes assessed on deposits in a financial institution in this state shall be a lien on the deposit of each person as of the day fixed by the tax commission of Ohio for the listing of such deposits. Taxes assessed on the shares of stock of such an institution, all of whose shares are withdrawable and defined as deposits in chapter four of this title, shall be a lien on such shares so defined as deposits as of the day so fixed. It shall be the duty of every financial institution to pay the taxes on the amount of such deposits and/or withdrawable shares assessed in its name to the treasurer of state and any such institution failing to pay such taxes as herein provided shall be liable by way of penalty for the gross amount of the taxes due on and with respect to all its deposits and withdrawable shares assessed

holders are taxed. The asserted interest of the depositors is in the surplus of the bank, which is primarily a reserve against losses and secondarily a repository of undivided earnings. So long as the bank remains solvent, depositors receive a return on this fund only as an element of the interest paid on their deposits. To maintain their intangible ownership interest, they must maintain their deposits. If a depositor withdraws from the bank, he receives only his deposits and interest. If he continues, his only chance of getting anything more would be in the unlikely event of a solvent liquidation, a possibility that hardly rises to the level of an expectancy. It stretches the imagination very far to attribute any real value to such a remote contingency, and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point. Cf. *Collett* v. *Springfield Savings Society*, 13 Ohio Cir. Ct. Repts. 131, aff'd 56 Ohio St. 776, 49 N. E. 1109 (1897).

in its name and for an additional amount of one hundred dollars for every day of delay in the payment of such taxes.

"SEC. 5673-2. . . . A financial institution so required to pay to the treasurer of state the taxes assessed upon its deposit accounts, as taxable property of its depositors, and/or upon its withdrawable shares as taxable property of its shareholders respectively, as provided in the next preceding section, may, upon receipt of notice of the day fixed for the listing of such deposits, charge the amount thereof to and deduct the same from the deposit of each depositor, or from the interest that is due or thereafter becomes due thereon, or from the dividends that are due or thereafter become due thereon, as the case may be, and shall have a lien upon such deposit, interest and/or dividends and on all funds in its possession belonging to such depositor or shareholder, or which may at any time come into its possession, for reimbursement of the taxes so payable, with legal interest. Such lien may be enforced in any appropriate manner at any time within six months after the payment of the taxes to the treasurer."

The Ohio court, however, has held that this tax is imposed on the depositors.[9] But that does not end the matter for us. We must judge the true nature of this tax in terms of the rights and liabilities which the statute, as construed, creates. In assessing the validity of the tax under federal law, we are not bound by the state's conclusion that the tax is imposed on the depositors, even though we would be bound by the state court's decision as to what rights and liabilities this statute establishes under state law. The court's mere conclusion that the tax is imposed on the depositors is no more than a characterization of the tax. "Where a federal right is concerned we are not bound by the characterization given to a state tax by state courts or legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted." *Carpenter* v. *Shaw*, 280 U. S. 363, 367 (1930). See also *New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals, supra,* at 674; *Educational Films Corp.* v. *Ward, supra,* at 387. "Neither ingenuity in calculation nor form of words in state enactments can deprive the owner of the tax exemption established for the benefit of the United States." *Missouri ex rel. Missouri Ins. Co.* v. *Gehner,* 281 U. S. 313, 321 (1930). Therefore, we proceed to examine what rights and liabilities the statute creates.

We note, first, that should the bank be unable to pay the tax, after it has been assessed, there is no provision entitling the State of Ohio to collect it from the depositors. A tax against the depositors which is recoverable only from the bank looks like a tax against the bank. And if the tax is in fact against the bank, it does not matter

---

[9] As construed by the state court, the "intangible property tax" on depositors applied to different property than did the "deposit" tax also imposed on them, involving, as we see it, no question of duplication or overlapping between the two taxes.

whether the ultimate economic impact is passed on to the depositors. *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 519 (1907).

Next, it appears that the statute does not relieve the bank from having to pay the tax on the "intangible property interest" of a depositor who had an account with the bank on the assessment date of the tax, but has withdrawn his account before the collection date. And if the bank is required to pay on the former depositor's account, there is no provision entitling the bank to reimbursement from him. It should be observed that in the case of the deposit tax the statute does contain provisions protecting the bank in such a situation. §§ 5412, 5673–1, 5673–2.[10]

Finally, and perhaps most important, if this tax is on the depositors, we must find somewhere a right in the bank to make itself whole from the depositors for the taxes paid on their account. In all the cases upholding state taxes against shareholders, without the exclusion of federal obligations owned by the corporation, an express or implied right of reimbursement was presupposed. See *Van Allen* and other cases at p. 147, *supra.* As already observed, in the case of the Ohio taxes on shares and deposits the statute contains such a right (§§ 5673,

---

[10] Section 5412 provides in part: "Upon receiving such report the tax commissioner shall ascertain and assess . . . the amount of taxable deposits of such institution in each county in which the institution maintained an office or offices for the receipt of deposits. Such amounts shall be assessed in the name of such financial institution excepting that the amounts of the taxable deposits wholly withdrawn from each such institution within the times mentioned in section 5411–2 of the General Code [that is, between the date of assessment and the bank's receipt of the notice of such date, or if no notice is received, the next January 1] and separately set forth in such report shall be subtracted from the amount of taxable deposits so assessed and separately assessed in the names of such respective depositors."

For §§ 5673–1 and 5673–2, see note 8, pp. 149–150, *supra.*

5673–2).[11]   In the present cases we can find no such right. It may be true that where the tax paid by the bank is *less* than the interest which the bank *contemplates* paying the depositors, no such right of reimbursement is necessary.   If, for example, a bank has $100,000 of undivided profits, intends to pay its depositors $75,000 interest on their deposits, and has an obligation for this tax of $10,000, it perhaps makes no difference whether the bank pays $65,000 to its depositors, without recovering anything back from them, or pays them $75,000, but later recovers back the $10,000 tax paid for their account.   Under either method the bank comes out whole, and the depositors receive the same net interest payment.[12]   But if the bank has *declared* the $75,000 interest payment before the tax is due, we can find nothing in the statute which would give the bank the right either to deduct the $10,000 tax from the interest payment, or to recover it back from the depositors.   And conceivably the tax might *exceed* the interest payable to the depositors, in which event the bank would be left short, absent a right to recover the excess from the depositors.

The Ohio court thought that in charging the tax to surplus, the bank in reality would be reducing the depositors' interest in the surplus, which it described as being "owned" by them, and that therefore in no circumstance was a right of reimbursement necessary.   But there are difficulties with this proposition.   If this means that the corporate fiction should be disregarded, the result would be that the government bonds would have to be excluded, since on this hypothesis such securities should then be treated as the property of the depositors.   On the other

---

[11] See note 8, pp. 149–150, *supra.*

[12] Even so, if a comparable situation arose in connection with the tax on shareholders, the bank would have a right of reimbursement under the provisions of the Ohio statute.   See note 8, pp. 149–150, *supra.*

hand, if the Ohio court was referring to the depositors' equitable interest in the surplus, as seems more likely, then without a right of recoupment the bank as well as the depositors bears the impact of the tax.

Without provisions protecting the bank against the burdens of the tax, we cannot assume that the statute's operation will not infringe on the immunity of the federal obligations held by the banks.   It is not adequate merely to suggest that a bank may be entitled to make itself whole from the depositors under Ohio common law.   For no such common-law right has been called to our attention.   Rather, the Ohio court's opinion indicates that the bank may be left without any right of reimbursement.[13]

We conclude that this tax is on the depositors in name only, and that for federal purposes it must be held to be on the banks themselves.   Accordingly, the judgments in both cases are

*Reversed.*

MR. JUSTICE BURTON took no part in the consideration or decision of these cases.

---

[13] The Ohio court stated: "In our opinion, such a provision [an express right of reimbursement] is not necessary to enable such a financial institution to secure such reimbursement."   161 Ohio St., at 136, 118 N. E. 2d, at 659.   It is clear that by this statement the court did not mean that an implied right of reimbursement existed under Ohio law, for it then went on to hold that "the financial institution, which pays the tax on [the depositors'] property interests in the corporation, will always be able to reimburse itself by reducing the ultimate value of the property interests of those who are the only ones who can have any claim to benefit from the ownership interests taxed."   161 Ohio St., at 137, 118 N. E. 2d, at 659–660. This is of course not reimbursement in any proper sense of the term.