251 A.2d 170.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PROVIDENCE *vs.* FRED M. LANGTON, *Tax Administrator.*

MARCH 13, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This is a petition brought in the superior court by the plaintiff First Federal Savings and Loan Association of Providence, hereinafter referred to as First Federal, for judicial review of an order of the defendant tax administrator of the state of Rhode Island pursuant to the provisions of G. L. 1956, §44-15-5-J, as amended.   It therein seeks a refund with interest of a tax paid under protest to the defendant administrator.   The tax was assessed as of June 30, 1963, and thereafter First Federal under the provisions of §44-15-5-I, as amended, sought a hearing before the administrator on the ground that it had been aggrieved by his order assessing such tax.   After the hearing, on December 10, 1963, the administrator ordered First Federal to pay the tax with accrued interest.   Thereupon First Federal paid the tax under protest and instituted in the superior court this action for a refund.

In superior court First Federal urged that the statute under which the tax was assessed was unconstitutional.   The case was tried before a justice of that court sitting without a jury, who thereafter entered judgment for First Federal, sustaining its challenge to the statute and declaring it unconstitutional on the ground that it failed to exempt specifically obligations of the United States from the coverage thereof.   Several other contentions urged by First Federal as grounds for holding the statute unconstitutional were rejected by the superior court.   The administrator prosecuted an appeal from the judgment to this court, while First Federal prosecuted a cross appeal from the action of the superior court in rejecting other grounds advanced as establishing the invalidity of the statute.

The trial justice found the statute unconstitutional in

that it "* * * by failing to exempt obligations of the United States is itself void. All assessments made under it must be void." He then went on to declare the whole statute to be void as to this plaintiff because it was unconstitutional and contrary to the express statute law of the United States. This is not a case raising an issue whether a state, in an exercise of its taxing power, exempts particular properties therefrom. The controlling consideration here is the well-settled rule that the properties of the federal government are immune from and beyond the taxing power of the several states.

In *Society for Savings in the City of Cleveland* v. *Bowers,* 349 U. S. 143, 99 L.Ed. 950, 75 S.Ct. 607, the Supreme Court made clear the immunity of federal obligations from state taxation. The court therein said at 144, 99 L.Ed. 955, 75 S.Ct. 608: "This rule, aimed at protecting the borrowing power of the United States from state encroachment, was derived from the 'Borrowing' and 'Supremacy' Clauses of the Constitution, and the constitutional doctrines announced in *McCulloch* v. *Maryland,* 4 Wheat. 316 (1819). It was subsequently embodied in a succession of federal statutes, the existing statute being R. S. §3701, 31 U. S. C. §742." It is conceded that the statute here under consideration does not in its express terms provide for the exclusion of federal obligations from its coverage.

The conclusion of the trial justice, as we understand it, is that the failure to exclude federal obligations in express terms from the coverage of tax legislation renders that legislation unconstitutional on its face. We are unable to agree with so broad a proposition. In our opinion, the question of whether a state taxing statute includes federal obligations within its coverage is a matter of legislative intent, and where the pertinent terms of the statute obscure the intent, it is to be determined by well-established rules of statutory construction. In this court First Federal

so argues, its basic contention being that the failure to expressly exclude federal obligations from the coverage of the act discloses a legislative intent, at least by implication, to include such federal obligations within its coverage and to direct that they be taxed. On this basis it argues that the pertinent statute is rendered unconstitutional because of an implied inclusion within its coverage of federal obligations.

Our attention is directed by First Federal to §44-15-2, as amended, wherein the legislature imposed an annual tax on every banking institution as defined in the act at the rate of 40 cents for each $100 of deposits with such banking institution on the last business day of June. The act in express terms then excludes from its coverage certain properties, namely, the stocks of state banks and trust companies organized under the laws of this state; the stocks of national banking associations located within the limits of this state; real property located in Rhode Island owned by such banking institutions; and mortgages on real property in Rhode Island.

The prime thrust of First Federal's contention that the statute is unconstitutional rests upon its argument that the legislature in the exclusions clearly demonstrates its intention to enumerate those properties that would be excluded from the coverage of the act and that its failure to specifically exclude federal obligations owned by the bank therein discloses its intention to include such federal obligations within the scope of the act. With this we are unable to agree. We consider as significant the fact that each of the particular properties enumerated in the exclusions set out in the act is property within the taxing power of the state, and, therefore, the legislature was exempting such properties from the scope of the act.

However, federal obligations are not within the taxing power of the state, and it is our opinion that had the leg-

islature included federal obligations within the list of exemptions, its action would have been meaningless, such properties being beyond the taxing power of the state. In *Macallen Co.* v. *Massachusetts,* 279 U. S. 620, 73 L.Ed. 874, 49 S.Ct. 432, the statute then under consideration, in its definition as to what would constitute net income, expressly excluded therefrom all interest received upon bonds, notes, and certificates of indebtedness of the United States. The court at page 624, 73 L.Ed. 878, 49 S.Ct. 433, commenting on the statute and the exemption, noted: "Of course, in respect of United States securities, the statutory exemption is superfluous."

First Federal refers to the *Bowers* case, arguing that therein the Supreme Court of the United States held an Ohio statute unconstitutional on the ground that it had failed to *expressly* exclude from its coverage federal obligations held by the involved banks. We have examined that case closely, and nowhere therein do we find any reference by the court to the effect of a failure to specifically exclude from a state taxing statute property which is beyond the taxing power of the state. It held only that the Ohio court had erred in finding that the tax being considered therein was not one upon the banks but upon the depositors thereof so that the tax was in fact levied on the interest of the depositors and shareholders of the banks. The court based its ruling on its inability to agree with the Ohio court's characterization of the tax as one upon the banks' depositors rather than on the banks themselves. See Annot., 99 L.Ed. 961.

It would be unreasonable to require a legislature, when enacting a taxing statute, to specifically exclude all properties which are not within its power to tax. Certainly, to require such a delineation of the state's taxing power upon every occasion that the taxing power was exercised by the legislature, would be to require the legisla-

ture to do that which would be superfluous. This we do not require. *Scituate* v. *O'Rourke,* 103 R. I. 499, 239 A.2d 176. In short, it is our opinion that significance attaches to the fact that, in framing the legislation, the legislature intended to exempt certain properties over which it had taxing power. We cannot agree, however, that the failure of the legislature to exclude properties that are not within its taxing power discloses an intent to bring such property within the scope of the legislation.

In support of its contention that the legislature, in enacting §44-15-2, as amended, intended to make the pertinent federal obligations subject to the tax, First Federal argues that the legislature had in prior enactments specifically exempted such federal obligations from the scope thereof. This, it argues, indicates that if it had not intended to tax these obligations, the legislature had knowledge of the appropriate method for excluding them from the coverage of the statute. If we assume that the statutes to which such reference is made were intended by the legislature to directly exempt federal obligations from the scope thereof, we cannot agree that with respect to this specific legislation the legislature so misconceived the applicable law, constitutional and statutory, as to purport to tax by implication federal obligations. It is presumed that the legislature knows the limits of its power to tax and the law concerning immunity from taxation and is aware of its want of authority to tax the federal obligations.

We are aware that the administrator assessed and levied against the federal obligations owned by First Federal apparently in the belief that the act conferred authority upon the state to tax these obligations of the federal government. This action was obviously administrative error, for these obligations are immune to taxation by the states. See *First Agricultural National Bank* v. *Tax Commission,* 392 U. S. 339, 20 L.Ed.2d 1138, 88 S.Ct. 2173. It was in fact an erro-

neous administrative interpretation of law as it related to the power of the state to levy against the federal obligations. It is conceded that this was an unconstitutional application of the act by the administrator, and to the extent that it taxed such federal securities it is void. We are fully convinced, however, that administrative error in the interpretation of legislation cannot be relied upon to impute to the legislature an intention to enact legislation that would be void. *Group Securities, Inc.* v. *Carpentier,* 19 Ill.App.2d 513, 154 N.E.2d 837; *Casale* v. *Pension Commission of the Employees' Retirement System,* 78 N.J.Super. 38, 187 A.2d 372.

It is our opinion that to hold that the tax under consideration is valid except as to that which was illegally assessed by the administrator against the value of federal securities owned by First Federal sufficiently serves to protect the interest of the United States in preserving its credit and borrowing power. At the same time such a conclusion avoids unduly limiting the taxing power of the state by holding the entire act void.

We turn then to First Federal's appeal from the superior court's rejection of several of its contentions that the statute was unconstitutional. In pressing one of these contentions, First Federal directs our attention to §44-15-5-I, as amended. This statute authorizes the administrator to conduct a hearing upon the request of any banking institution aggrieved by the administrator's action in determining the amount of any tax to be assessed under the provisions of the chapter. It further provides that the administrator shall set a time and place for such hearing and "Upon such hearing the tax administrator shall make such order as may be *equitable.*" (italics ours) It is argued by First Federal that this constitutes a delegation of legislative power to an administrative officer without sufficient standards, criteria, and limitations on the employment thereof being

set out in the statute. This, it contends, violates the constitution and vitiates the entire tax. We cannot agree.

The trial justice held that the pertinent provision of §44-15-5-I, as amended, established sufficient criteria to save it from unconstitutionality. He directed attention to §44-15-5-J, as amended, which provides that any banking institution aggrieved by an order of the administrator made under §44-15-5-I, as amended, may petition the superior court for review thereof. It further provides that "* * * the court shall proceed to hear said petition and to determine whether said order was proper. If, upon such hearing it shall appear that the order was proper, the court shall confirm the same; if improper, the court shall make such order as shall be proper and may order a refund with interest * * *."

The superior court concluded that the administrator's power to make such order as may be "equitable" contemplated the same meaning as the limitation imposed upon the superior court upon review of such administrator's order. It is there provided that if the order is improper, the court shall make such order as is proper. The trial justice went on to say: "This must mean proper as a matter of law and there seems to be no ambiguity about it. If that be so and the standard here is the same as it was before the Tax Administrator, the term 'equitable' as used as a basis for his order must have the same meaning, that is, whether the order was correct as a matter of law." We see no error in this ruling of the trial justice.

It is our opinion that the statutory delegation to the administrator of authority to make an order as shall be "equitable" satisfies the constitutional requirement that such a delegation be accompanied by sufficient standards and limitations upon its use by the administrator. It is well settled that the general assembly may not unconditionally delegate any of its legislative power and any at-

tempt to do so is unconstitutional and void. *Opinion to the Governor*, 91 R. I. 346, 162 A.2d 802. This court in *Opinion to the Governor*, 88 R. I. 202, 145 A.2d 87, subscribed to the more modern view that a legislature may delegate limited portions of the legislative power to administrative agencies if it be contained in expressly defined channels. There we said that this simply amounts to the legislature's authorizing other bodies to act as its agents or auxiliaries in carrying out its constitutional duties. We went on to say at 205, 145 A.2d at 89: "Numerous instances could be cited in this and other jurisdictions, both federal and state, where such limited authorization has been judicially approved and held not to be in conflict with the well-established principle of law that delegated power cannot be lawfully delegated. But this view is so universally accepted we deem it unnecessary to cite such instances here." See *Schecter* v. *Killingsworth*, 93 Ariz. 273, 380 P.2d 136; *Carney* v. *Board of Tax Appeals*, (Ohio), 157 N.E.2d 894.

In this case the statute prescribes the base and the rate of the tax to be levied in §44-15-2, as amended. It also requires that the administrator, after hearing a taxpayer's claim to be aggrieved by the assessment, shall "make such order as may be equitable." The question then is whether such statutory provision establishes standards and criteria sufficient to preserve the constitutionality of this legislation. In our opinion, it does so.

It is clear from the context in which it appears in the statute that the word "equitable" is used in a special sense. This language contemplates, in our opinion, that any order made by the administrator must balance the equities between the state and the taxpayer as well as avoid discrimination between taxpayers. In short, it is our view that the statute limits the administrator to the making of such orders as will be consistent with the base and rate of the tax as established by the statute as well as with the demon-

strated obligation of the taxpayer to pay the tax due. Such orders are equitable when they are consistent with the equity of both the state and the taxpayer in the assessment and levying of the tax and do not discriminate between taxpayers.

First Federal contends that this statute suffers from the same constitutional infirmity as did that considered in *Moore* v. *Langton,* 92 R. I. 141, 167 A.2d 558. The statute under consideration in that case provided for a hearing for an aggrieved taxpayer and empowered the administrator, subsequent to such hearing, to "* * * make such adjustment of the tax as he may deem proper." In *Moore* v. *Langton* this court recognized the subjective nature of the limitation on an exercise of the power delegated. It permitted the administrator to adjust the tax or, in other words, to reduce a tax without regard to the base and rate prescribed in the statute. In that case we noted that the administrator was empowered to "* * * cause the law to be one thing for A and another thing for B." Under that statute, giving such broad discretionary power to the administrator enabled him to ignore the equities between the state and the taxpayer and left him, in effect, free to alter the imposition of the tax in such a manner as to alter the base and rate thereof without limitation by any standards or criteria.

We are persuaded that the legislature, in enacting the instant statute and providing that orders entered by the administrator be equitable, intended to cure the constitutional defect that inhered in its prior statute permitting such tax to be adjusted in the discretion of the administrator or as the administrator deemed proper. It is well settled that a legislature is presumed to know the nature and character of its prior legislation on the same subject matter. *Carlson* v. *McLyman,* 77 R. I. 177, 74 A.2d 853. It follows that the legislature must be presumed also to

know the effect of judicial interpretation of its prior legislation and that in enacting similar legislation on the same subject matter will so legislate as to preclude the infirmity that the court found in the prior legislation. It is then our opinion that the grant of authority to the administrator to "make such order as may be equitable" is not an unconstitutional delegation of a portion of the legislative power to the administrator.

We are aware that First Federal has made other arguments in which it contends that the statute is unconstitutional. However, after a thorough examination of these arguments and those of the administrator in response thereto, we are persuaded that the trial justice did not err in reaching the conclusions upon which he rejected these contentions of First Federal. It would serve no useful purpose to extend this opinion by a further discussion of these particular issues. It is our view then that the judgment entered by the trial justice should be reversed.

The appeal of the defendant administrator is sustained; the cross appeal of the plaintiff First Federal is denied and dismissed; and the judgment entered below is reversed.

Motion for reargument denied.

*Winograd, Winograd & Marcus, Max Winograd, Allan M. Shine,* for plaintiff.

*Herbert F. DeSimone, Attorney General, D. A. St. Angelo,* of counsel, for defendant.