513 So.2d 114 (1987)
DEPARTMENT OF REVENUE, Etc., et al., Appellants,
v.
FIRST UNION NATIONAL BANK OF FLORIDA, Etc., et al., Appellees.
No. 70186.
Supreme Court of Florida.
September 24, 1987.
*115 Robert A. Butterworth, Atty. Gen., and Linda Lettera, Asst. Atty. Gen., Tallahassee, for appellants.
Joseph C. Jacobs, Thomas M. Ervin, Jr. and Stuart E. Goldberg, of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellees.
Robert J. Winicki, of Mahoney, Adams, Milam, Surface & Grimsley, Jacksonville, for Barnett Banks of Florida, Inc., amicus curiae.
GRIMES, Justice.
This is an appeal from a decision of the First District Court of Appeal declaring invalid a portion of part VII, chapter 220, Florida Statutes (1985). First Union National Bank v. Florida Department of Revenue, 502 So.2d 964 (Fla. 1st DCA 1987). Under the mandatory jurisdiction of article V, section 3(b)(1), Florida Constitution, we uphold the statute.
Appellees (banks) filed suit challenging the validity of the franchise tax imposed on banks and savings associations by section 220.63, Florida Statutes (1985), on the ground that it violated the Federal Public Debt Statute, 31 U.S.C. § 3124 (1982). The trial court upheld the statute and entered summary judgment against the banks. The First District Court of Appeal reversed and held the taxing statute invalid to the *116 extent that it purported "to include federal instrumentalities in its measure."
Section 220.63, Florida Statutes (1985), states in pertinent part:
(1) A franchise tax measured by net income is hereby imposed on every bank and savings association for each taxable year commencing on or after January 1, 1973, and for each taxable year which begins before and ends after January 1, 1973. The franchise tax base of any bank for a taxable year which begins before and ends after January 1, 1972, shall be prorated in the manner prescribed for the proration of net income under s. 220.12(2).
(2) The tax imposed by this section shall be an amount equal to 5 1/2 percent of the franchise tax base of the bank or savings association for the taxable year... .
(3) For purposes of this part, the franchise tax base shall be adjusted federal income, as defined in s. 220.13, apportioned to this state, plus nonbusiness income allocated to this state pursuant to s. 220.16, less the deduction allowed in subsection (5) and less $5,000.
The banks, which derive substantial monies from federal obligations, argued that the tax was prohibited under 31 U.S.C. § 3124 (a), which reads:
Exemption from taxation (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except 
(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
(2) an estate or inheritance tax.
The district court pointed out that the tax was measured by the adjusted federal income for the current tax year and imposed at the same rate as taxes are levied upon other corporations for the privilege of doing business in Florida. The court concluded that section 220.63 was the equivalent of an income tax and thereby invalid to the extent that it purported to include income from federal securities within its measure. However, the question is not whether the tax operates in a manner similar to an income tax. Rather, the question is whether the tax is a nondiscriminatory franchise tax as contemplated by the exception contained in 31 U.S.C. § 3124. An analysis of the treatment of that statute by the United States Supreme Court is essential to our determination.
Prior to 1959, the federal statute exempting United States obligations from taxing by the states simply read:
Except as otherwise provided by law, all stocks, bonds, Treasury notes and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority.
31 U.S.C. § 742. The United States Supreme Court interpreted this language to prohibit state taxes imposed on federal obligations, either directly or indirectly, as part of a tax on the taxpayer's total property or assets. New Jersey Realty Title Insurance Co. v. Division of Tax Appeals, 338 U.S. 665, 70 S.Ct. 413, 94 L.Ed. 439 (1950). However, that Court also consistently held that the statute did not prohibit nondiscriminatory taxes imposed on discreet property interests such as corporate shares or business franchises, even though the value of that interest was measured by the underlying assets, which included federal obligations. Werner Machine Co. v. Director of Taxation, 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956); Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191 (1923). In Society for Savings v. Bowers, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955), the Court acknowledged that this formal but economically meaningless distinction between taxes on government obligations and taxes on separate interests was "firmly embedded in the law."
In American Bank & Trust Co. v. Dallas County, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), the United States Supreme Court considered the validity of a *117 Texas property tax on bank shares under the new law. The value of United States obligations held by the banks was included in the determination of the value of the bank shares. Admitting that the tax would have been sustained under the old statute, the Court observed that under the language of the 1959 amendment, the tax was invalid because federal obligations were at least indirectly considered in computing the tax. Apropos to the instant case, however, the Court made the following observations:
The express exceptions to the 1959 amendment  franchise taxes and estate and inheritance taxes  reinforce this conclusion. Just as state tax laws relating to corporate or bank shares generally assess the shares according to the value of the corporation's assets, see Society for Savings v. Bowers, 349 U.S., at 148, 75 S.Ct., at 610, franchise and estate and inheritance taxes customarily assess the franchise or the demise at the value of the assets of the business or at the value of the property inherited. See, e.g., Werner Machine Co. v. Director of Taxation, 350 U.S., at 492, 76 S.Ct., at 534 [100 L.Ed. 634] (franchise tax measured by "net worth"); Plummer v. Coler, 178 U.S. 115 at 134, 20 S.Ct. [829] at 836 [44 L.Ed. 998] (inheritance tax measured by "the value of the property passing"); Home Ins. Co. v. New York, 134 U.S. [594] at 599, 10 S.Ct. [593] at 595 [33 L.Ed. 1025] (franchise tax measured by "capital stock and dividends").
Prior to the 1959 amendment, franchise and estate and inheritance taxes measured by the value of federal obligations, like bank shares taxes, were upheld on the theory that the tax was levied on the franchise or the transfer of property, rather than on the ownership interest in the federal securities themselves. By expressly exempting franchise and estate and inheritance taxes from the amended § 3701, Congress manifested its awareness that the new language would broaden significantly the prohibition as it had been construed by the courts. Congress must have believed that franchise and estate and inheritance taxes required federal obligations to "be considered, directly or indirectly, in the computation of the tax"; otherwise, the specific exemptions for these taxes would have been superfluous. There is no reason to conclude that shares taxes are any different.
... .
From the specific exceptions for franchise and estate and inheritance taxes, and the conspicuous omission of shares taxes from that group, only one inference is possible: Congress meant to bar shares taxes to the extent they consider federal obligations in the computation of the tax. Cf. Andrus v. Glover Construction Co., 446 U.S. 608, 616, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980); Andrus v. Allard, 444 U.S. 51, 56, 100 S.Ct. 318, 322, 62 L.Ed.2d 210 (1979).
463 U.S. at 863-64, 103 S.Ct. at 3375 (footnote omitted). Thus, it is evident that the Supreme Court recognized that a nondiscriminatory franchise tax is excepted from the exemption from taxation provided by 31 U.S.C. § 3124 even though it is measured by the value of federal obligations or the income therefrom.
In Garfield Trust Co. v. Director, Division of Taxation, 102 N.J. 420, 508 A.2d 1104 (1986), the New Jersey Supreme Court considered the same issue that is now before us. The state imposed a franchise tax computed by adding together prescribed percentages of a net worth base and a net income base. The net worth base included the face value of federal obligations, and the net income base included income on federal obligations. In upholding the validity of the tax, the court said:
In sum, we conclude that the CBT always has been and still is an annual franchise tax. The holding and implications of Werner Machine retain their vitality through recent decisions of both this Court and the United States Supreme Court. See American Bank and Trust Co. v. Dallas, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983); Memphis Bank & Trust Co. v. Garner, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983). Therefore, inclusion of the face value and interest income of federal obligations *118 in the bases for calculating the CBT does not by its own force violate the Federal Public Debt Statute.
102 N.J. at 428, 508 A.2d at 1109. The court also rejected the contention that the measuring of the tax with reference to the net income base transformed it from a franchise tax to an income tax when it observed:
This argument ignores the fact that the United States Supreme Court noted in Werner Machine: "This Court has consistently upheld franchise taxes measured by a yardstick which includes tax-exempt income or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such income or property." 350 U.S. at 494, 76 S.Ct. at 535, 100 L.Ed. at 637 (citations omitted) (emphases added).
102 N.J. at 427, 508 A.2d at 1108.
Any doubt that the New Jersey court had misconstrued 31 U.S.C. § 3124 was laid at rest when an appeal from that decision was dismissed by the United States Supreme Court for "want of a substantial federal question." Garfield Trust Co. v. Director, Division of Taxation, ___ U.S. ___, 107 S.Ct. 390, 93 L.Ed.2d 345 (1986). This was an appeal which invoked the obligatory jurisdiction of the Court in contrast to the discretionary jurisdiction it exercises with respect to certiorari cases. An appeal to the United States Supreme Court that is dismissed for want of a substantial federal question constitutes an adjudication on the merits. Hicks v. Miranda, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).
In an earlier decision, the Minnesota Supreme Court upheld a corporate franchise tax measured by the net income for the taxable year for which the tax was imposed even though interest on federal securities was includible in the net income. Reuben L. Anderson-Cherne, Inc. v. Commissioner of Taxation, 303 Minn. 124, 226 N.W.2d 611 (1975). As in the Garfield Trust case, the United States Supreme Court dismissed an appeal from that decision for want of a substantial federal question. Reuben L. Anderson-Cherne v. Commissioner of Revenue of Minnesota, 423 U.S. 886, 96 S.Ct. 181, 46 L.Ed.2d 118 (1975). A Montana franchise tax, similar to the Florida tax except for the fact that the franchise base was determined from the preceding year's income, has also been upheld against the contention that it was in violation of the Federal Public Debt statute. Schwinden v. Burlington Northern, Inc., 691 P.2d 1351 (Mont. 1984), clarified, 730 P.2d 442 (Mont. 1986).
Consistent with the legislative findings and declaration of intent contained in chapter 72-278, Laws of Florida, section 220.63 is a classic nonproperty excise tax on the privilege of operating a bank or savings association within the state. As such, it is a franchise tax as contemplated by the exception numbered (a)(1) of 31 U.S.C. § 3124. Contrary to the suggestion of the banks, our holding does not mean that we would sustain a franchise tax on a personal business measured by its net income in the face of a challenge grounded upon Florida's constitutional proscription against a personal income tax.
There remains an additional question that must be answered which was not reached by the First District Court of Appeal because of its disposition of the case. Section 220.63 only falls within the exception contained in 31 U.S.C. § 3124 if it is a "nondiscriminatory" franchise tax. In Memphis Bank & Trust Co. v. Garner, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), the United States Supreme Court defined the term "nondiscriminatory" in the context of 31 U.S.C. § 3124 as follows:
A state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations. See e.g. United States v. County of Fresno, supra, 429 U.S. 452 at 462, 97 S.Ct. [699] at 704 [50 L.Ed.2d 683] ("a state tax imposed on those who deal with the Federal Government" is unconstitutional if the tax "is imposed [un]equally on ... similarly situated constituents of the State"). Our cases establish, however, that if the "tax remains the same whatever the character of the [property] may be, no claim can be *119 sustained that this taxing statute discriminates against the federal obligations."
459 U.S. at 397-98, 103 S.Ct. at 695-96 (emphasis supplied). The Court held the Tennessee bank tax invalid in that case because it included within its tax base income from federal obligations but excluded income from otherwise comparable state and local obligations.
Florida's tax mandates the inclusion of all interest earned on federal, state and local debt obligations in the tax base for purposes of measuring the tax. Federal obligations are included in the tax base by section 220.63(3), which adopts the definition of "adjusted federal income" codified in section 220.13, Florida Statutes (1985). State and local obligations are included in the tax base by section 220.13(1)(a)2, Florida Statutes (1985), which requires the addition or inclusion of all interest which is "excluded from taxable income under s. 103(a) of the Internal Revenue Code." Section 103(a) of the Internal Revenue Code excludes interest on the obligations of the state or political subdivision thereof. Thus, there is a parity of treatment for all federal, state and local debt obligations.
Consistent with the statutory purpose, rule 12C-1.013(1)(a)2., Florida Administrative Code, provides as follows:
Pursuant to legislation enacted during the 1972 regular session of the legislature and retroactive to January 1, 1972, taxable income as defined in Code Section 220.13(2) shall be adjusted under Code section 220.13(1)(a)2. by adding thereto all interest which is excluded from federal taxable income. This addition shall include interest income excluded under section 103(a) of the Internal Revenue Code, principally interest from state and local debt obligations, and interest income derived from other obligations which are exempt from federal income tax by federal law, by state law or by the terms of their issue.
By affidavit, the assistant director of the Division of Audits attested that since inception of the franchise tax on banks, the Department of Revenue has consistently maintained the policy that interest income from debt obligations issued by the federal government or by any state or local authority is subject to inclusion in the franchise tax base. Though not controlling, the administrative construction of a statute by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. Gay v. Canada Dry Bottling Co., 59 So.2d 788 (Fla. 1952); Boca Raton Publishing Co. v. Department of Revenue, 413 So.2d 106 (Fla. 1st DCA 1982).
In granting tax exemptions for certain state and local debt obligations, the legislature often includes savings language which states that the exemption "shall not be applicable to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owed by corporations." We believe this terminology is sufficiently broad to encompass the taxes imposed by part VII of chapter 220. To hold otherwise would be contrary to the legislative intent that the franchise tax should not discriminate in favor of state and local obligations. See National Bank of Alaska v. State, Department of Revenue, 642 P.2d 811 (Alaska 1982); Connecticut Bank & Trust Co. v. Tax Commissioner, 178 Conn. 243, 423 A.2d 883 (1979). Significantly, the legislature employed essentially the same language in a repealer provision contained in the very law which created the franchise tax, to wit:
Sections 125.019, 159.15, 159.31, 159.50, 183.14, 215.76, 243.33, 315.11, 340.20, 348.122, 348.65, 348.762, 349.13, 403.1834, 423.03 and 554.102, Florida Statutes, and all other comparable statutes of tax exemption, are hereby repealed to the extent that they would exempt interest, income or profits on debt obligations from the tax imposed by chapter 220, Florida Statutes.
Ch. 72-278, § 10, Laws of Fla.
The banks are able to point to only two statutes which purport to favor state and local debt obligations that do not contain the traditional savings clause and which were not specifically repealed by section 10 of chapter 72-278. One of these is *120 section 153.76, Florida Statutes (1985), which provides for the favorable treatment of state and local debt obligations in connection with the issuance of water and sewer bonds authorized by sections 153.62 and 153.63, Florida Statutes (1985). However, because section 153.76 was enacted in 1959, it was rendered inapplicable to the franchise tax by the 1972 repeal of "other comparable statutes of tax exemption ... that ... would exempt interest, income or profits on debt obligations from the tax imposed by chapter 220, Florida Statutes." Ch. 72-278, § 10, Laws of Fla.
The other statute relied on by the banks is section 348.91, Florida Statutes (1985), which purports to exempt Pasco County Expressway bonds from state taxation. This law was not passed until after section 10 of chapter 72-278, Laws of Florida. However, it is undisputed that no bonds have ever been issued pursuant to this statute. If they were, section 348.84, Florida Statutes (1985), requires that they would have to be issued under the authority of the State Bond Act which contains the selfsame language that the exemption from state and local taxation is not applicable "to any tax imposed by chapter 220 on interest, income, or profits on debt obligations owed by corporations." § 215.76, Fla. Stat. (1985). Therefore, we need not decide whether section 10 of chapter 72-278, Laws of Florida, was sufficient to negate the exemption later provided in section 348.91.
We hold that the Florida franchise tax on banks and savings associations is nondiscriminatory and, therefore, qualifies as an exception to the exemption as set forth in 31 U.S.C. § 3124. We reverse the decision of the First District Court of Appeal and direct that the summary judgment for appellants be reinstated.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.