# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1764

_____

Steven Chase, On Behalf of Himself and All Others; Shawn Penner, On Behalf of Himself and All Others

*Plaintiffs - Appellants*

v.

First Federal Bank of Kansas City; Richard T. Merker; Helen Skradski; Benjamin J. Fries; William W. Hutton; James R. Jarrett

*Defendants - Appellees*

------------------------------

Office of the Comptroller of the Currency; American Bankers Association; Missouri Bankers Association

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 12, 2019
Filed: August 7, 2019

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Plaintiffs Steven Chase and Shawn Penner appeal the district court's[1] dismissal of their putative class action lawsuit against First Federal Bank of Kansas City ("First Federal") and former directors of Inter-State Federal Savings and Loan Association of Kansas City ("Inter-State").  We affirm.

First Federal is a federally chartered mutual savings and loan association that merged with and then absorbed Inter-State, another mutual savings and loan association, in 2016.  Federally chartered mutual savings and loan associations provide their members (*i.e.*, depositors) with a federally insured rate of interest.  *York v. Fed. Home Loan Bank Bd.*, 624 F.2d 495, 500 (4th Cir. 1980).  Though members "are the legal 'owners' of a mutual savings and loan association, their interest is essentially that of creditors of the association and only secondarily as equity owners." *Id.* at 499-500.  "They cannot sell what they 'own', and if they withdraw savings they receive only the nominal value of the account rather than a portion of the mutual's net worth, which is valuable to them only to the extent it permits the bank to pay higher interest."  *Ordower v. Office of Thrift Supervision*, 999 F.2d 1183, 1185 (7th Cir. 1993).

Chase and Penner were members of Inter-State and seek to represent Inter-State's other pre-merger members in their putative class action lawsuit.  They claim that Inter-State's merger with First Federal was inequitable because Inter-State had $25 million more than First Federal in excess capital.  That $25 million surplus, they allege, should have been distributed to Inter-State's members instead of becoming part of the merged entity.  They also claim that Inter-State's decision to merge with

---

[1] The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

First Federal should have been decided by a vote of Inter-State's members and not by its directors.

Chase and Penner's Amended Complaint has three counts. Count I alleges that the defendant directors breached their fiduciary duties to Inter-State's members by not fully evaluating the merger, not ensuring that the $25 million surplus was distributed to Inter-State's members, not calling for a vote of all Inter-State's members to approve the merger, not adhering to Inter-State's charter, and approving the merger. Count II alleges that First Federal was unjustly enriched when it retained Inter-State's $25 million surplus. Likewise, Count III alleges conversion against First Federal for taking control of Inter-State's surplus.

The district court determined that Chase and Penner failed to plead a claim for breach of fiduciary duty. It reasoned that Inter-State's members had no ownership interest in the surplus and therefore that (1) the directors had no duty to distribute the surplus, and (2) members lost nothing of value when the associations merged, thereby suffering no damages. It also concluded that Inter-State's charter did not give the members a right to vote on the merger. Finally, the district court held that because Inter-State's members had no ownership interest in its $25 million surplus, they could not state claims against First Federal for unjust enrichment and conversion. For these reasons, the district court granted the defendants' motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). Chase and Penner appealed.

We review *de novo* the grant of a motion to dismiss for failure to state a claim. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016). The district court performed a choice-of-law analysis and determined that Kansas law applies, which the parties do not dispute. Under Kansas law, "[t]he nature, construction, and legal effect of a written instrument are questions of law." *State ex rel. Sec'y of Soc. & Rehab. Servs. v. Jackson*, 822 P.2d 1033, 1037 (Kan. 1991). Thus, to determine

whether Chase and Penner stated a claim, we will interpret and apply Inter-State's charter.

The district court correctly concluded that Inter-State's members did not have an ownership interest in its surplus. This conclusion is consistent with long-standing Supreme Court precedent and the language of Inter-State's charter. In *Society for Savings v. Bowers*, for example, the Supreme Court explained that the surplus of a mutual association is "primarily a reserve against losses and secondarily a repository of undivided earnings." 349 U.S. 143, 150 (1955). When the association is solvent, members receive a return on the surplus "as an element of the interest paid on their deposits." *Id.* Members also may have the opportunity to realize a gain in the "unlikely event of a solvent liquidation," but that possibility "hardly rises to the level of an expectancy." *Id.* "It stretches the imagination very far to attribute any real value to such a remote contingency, and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point." *Id.*

The Supreme Court later relied on *Bowers* in *Paulsen v. Commissioner*, 469 U.S. 131, 139 (1985), and its reasoning has been followed by federal and state courts ever since, *see, e.g.*, *Reschini v. First Fed. Sav. & Loan Ass'n of Ind.*, 46 F.3d 246, 257 (3d Cir. 1995) (noting the "insubstantial nature of the ownership interests held by depositor-members of a mutual savings association"); *Ordower*, 999 F.2d at 1187 ("A depositor's interest in a mutual [savings and loan] is a liquidation preference, not a transferable property right."); *Lovell v. One Bancorp*, 614 A.2d 56, 67 (Me. 1992) ("The depositors in a mutual institution have no legal title to the surplus of the institution and do not share in any risk of loss since their deposits are insured."). The law is therefore well-settled that members of a mutual association do not have an ownership interest in its surplus.

But Chase and Penner claim that Inter-State's charter is unique and that its language conveys to its members an interest in its $25 million surplus. They rely on the following provision of Inter-State's charter:

> As of June 30 and December 31 of each year, after payment or provision for payment of all expenses, credits to general reserves and such credits to surplus as the board of directors may determine, and provision for bonus on savings accounts as authorized by regulations made by the Federal Home Loan Bank Board, the board of directors of the association shall cause the remainder of the net earnings of the association for the 6 months' period to be distributed promptly on its savings accounts, ratably, as declared by the board of directors, to the withdrawal value thereof; *in lieu of or in addition to such net earnings, any of the association's surplus funds may be likewise distributed*. Such net earnings shall be credited to savings accounts or paid, as directed by the owner.

(emphasis added). This provision and Inter-State's charter as a whole, however, are not unique. Inter-State's charter, "Charter K (Rev.)," was one of two standard mutual charters adopted by the Federal Home Loan Bank Board in 1953. *See* 18 Fed. Reg. 8715, 8727-28 (Dec. 25, 1953) (requiring the issuance of either "Charter N" or Charter K (Rev.)). Both of those charters—Charter N and Charter K (Rev.)—included the above provision, and both remained standard charter forms until 1984. *Id.* at 8728-29; 23 Fed. Reg. 9878, 9893-94 (Dec. 23, 1958); Charters and Bylaws Available to Federal Associations and Savings Banks, 48 Fed. Reg. 44174-01 (Sept. 28, 1983) (establishing a "single charter requirement for federal mutual institutions"); 12 C.F.R. § 544.1 (1984). The charters of all federally chartered mutual associations formed between 1953 and 1983 therefore contain the provision at issue. *See* 18 Fed. Reg. at 8727-28 (stating that Charter N would be issued upon application for a charter for a mutual association unless Charter K (Rev.) was requested). And yet despite the prevalence of these charters, which include the provision that Chase and Penner rely on, no court has concluded that members of a mutual association have an ownership interest in its surplus. Indeed, in *Paulsen*, the

Supreme Court considered the formation of mutual association "organized pursuant to Charter K (Rev.)," noted that "[p]otential depositors are motivated only by the rate of return on their accounts and the security of their deposits," and then quoted *Bowers* for the proposition that members' interest in the net proceeds of a solvent liquidation lacked "any real value." 469 U.S. at 138-39.

But even assuming that the provision is unique and that this is a case of first impression, Inter-State's members would not have an ownership interest in the $25 million surplus based on the provision's plain language. The provision states that Inter-State's board "may" distribute Inter-State's surplus to its members in certain situations. Inter-State's board was therefore permitted, but not required, to distribute its surplus to its members. *See Hill v. Kan. Dept. of Labor*, 248 P.3d 1287, 1290 (Kan. 2011) (distinguishing "directory language such as 'shall' or 'must'" from "the permissive word 'may'"); *State v. Engelhardt*, 119 P.3d 1148, 1158 (Kan. 2005) (characterizing the use of "may" as "plainly permissive"). Such permissive language does not convey an ownership right. *See, e.g.*, *Engelhardt*, 119 P.3d at 1158 (holding that statutory language stating that jurors "may be" accompanied by the defendant when viewing a crime scene provided "no absolute right" to the defendant to be present for the viewing); *Dotson v. Atchison, T. & S. F. Ry. Co.*, 106 P. 1045, 1047 (Kan. 1910) (holding that "[i]f the use of a way over one's land be shown to be permissive only, no right to use it is conferred"). This interpretation is consistent with the Supreme Court's decision in *Bowers* and confirms our conclusion that Inter-State's members did not have an ownership interest in its surplus.

Without an ownership interest in the $25 million surplus, Chase and Penner have not stated a claim against First Federal or Inter-State's directors. They acknowledge that "[e]ach claim was premised on the theory that Plaintiffs had an ownership interest in Inter-State's [s]urplus or a right to vote on and approve the merger." Thus, the district court properly dismissed their claims expressly premised on an ownership interest in the surplus.

Their claim for breach of fiduciary duty premised on a right to vote on the merger was also properly dismissed because, absent a right to receive surplus distributions when the associations merged, they pleaded no damages. *See Schneider v. Kansas Sec. Comm'r*, 397 P.3d 1227, 1247 (Kan. Ct. App. 2017) ("The requirements of a claim of breach of fiduciary duty are existence of a duty, breach of that duty, and *damages resulting from the breach*." (emphasis added)). The breach of fiduciary duty section of Chase and Penner's Amended Complaint merely states that "[a]s a direct and proximate result of Defendants' breaches, Plaintiffs and the Class have suffered damages in an amount to be determined at trial." Before the district court, they clarified that they were damaged because (1) "they did not receive distributions of capital at any time" and (2) their interest in Inter-State's surplus was diluted upon the merger. Similarly, Chase and Penner claim on appeal that "[d]eprived of their equity interest without compensation, [they] suffered damages." They claim no other damages arising from their right-to-vote claim. And when pressed on this issue during oral argument, their counsel referred back to the surplus. Thus, because all alleged damages arising from Chase and Penner's right-to-vote claim rest on the incorrect assumption that Inter-State's members had an ownership interest in the $25 million surplus, the district court properly determined that they did not state a valid claim.

For these reasons, we affirm.

---