**W. C. YORK, Petitioner,**

v.

**FEDERAL HOME LOAN BANK BOARD and Federal Savings and Loan Insurance Corp., Respondents,**

**First Federal Savings and Loan Association of Raleigh, Intervenor,**

**National Savings and Loan League, Amicus Curiae,**

**North Carolina Savings and Loan League, Amicus Curiae.**

**No. 79–1382.**

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1980.

Decided July 1, 1980.

Howard E. Manning and Michael T. Medford, Raleigh, N. C. (Manning, Fulton & Skinner, Raleigh, N. C., on brief), for petitioner.

Michael L. Seabolt, Harvey Simon, Washington, D. C. (Harold B. Shore, Federal Home Loan Bank Board, Washington, D. C., on brief), for respondents.

Arch E. Lynch, Jr., Raleigh, N. C. (John J. Geraghty, Cecil W. Harrison, Jr., Poyner, Geraghty, Hartsfield & Townsend, Raleigh, N. C., on brief), for intervenor First Federal Savings and Loan Association of Raleigh.

Harding deC. Williams, Gen. Counsel, Washington, D. C., on brief, for amicus curiae National Savings and Loan League.

L. P. McLendon, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N. C., Daniel J. Goldberg, Silver, Freedman, Housely, Taff & Goldberg, Washington, D. C., on brief, for amicus curiae North Carolina Savings and Loan League.

Before FIELD, Senior Circuit Judge, and HALL and PHILLIPS, Circuit Judges.

FIELD, Senior Circuit Judge:

On October 17, 1978, the First Federal Savings & Loan Association of Raleigh (hereinafter First Federal) filed an application with the Federal Home Loan Bank Board (hereinafter FHLBB or Bank Board) seeking to convert from a mutual form of ownership to a stock form of ownership while retaining its federal charter.[1] On May 17, 1979, the FHLBB approved the proposed conversion over the objections of petitioner and several other First Federal depositors. The approved plan was presented to the member/depositors of First Federal at a special meeting on June 29, 1979, and was overwhelmingly approved. Shortly thereafter, petitioner instituted a civil action in the United States District Court for the Eastern District of North Carolina, and filed a petition in this court for review of the agency determination.[2] Petitioner contends that the proposed conversion was unlawful since the statutory section authorizing conversions from mutual to stock organizations, 402(j) of the National Housing Act (NHA), expired on June 30, 1976, or in the alternative, that the Bank Board's decision to allow this conversion was arbitrary and capricious. We find these objections to be without merit and, accordingly, affirm the FHLBB.

In 1933, Congress enacted the Home Owners' Loan Act[3] which authorized the creation of federally chartered mutual savings and loan associations and also allowed previously chartered state associations to convert to federal associations. At the time the Act was passed, almost all savings and loans were organized as mutual associations; therefore, Congress adopted this form of organization for the federal system of savings and loans.

Shortly thereafter, states began passing legislation allowing state chartered mutual associations to convert to state stock associations. Conversions were perceived as necessary by many associations to raise additional capital. In 1948, Congress passed legislation allowing federal mutual savings and loans to convert to *state* stock associations. Federal mutuals converting pursuant to this amendment to 5(i) of the Home Owners' Loan Act lost their federal charters. In the ensuing years, the large number of federal mutuals converting to state stock associations resulted in an adverse impact on the federal system.

To stop the erosion of the federal system, the FHLBB imposed an administrative moratorium on federal to state conversions. Then in 1973, Congress added 402(j) of the National Housing Act[4] which gave the

---

1. A mutual savings and loan association is "owned" by its depositors and the right of control is based upon the amount deposited by a member in his account. In practice, a depositor signs a proxy form when first opening an account which allows the officers of the association to cast the depositor's votes as they see fit. Conversion to a stock corporation would transfer ownership and right of control to shareholders purchasing stock in the association.

2. This court has exclusive jurisdiction to consider challenges to FHLBB actions under 402(j)(4) of the National Housing Act, 12 U.S.C. § 1725(j)(4) and 12 U.S.C. § 1730a(k).

3. 12 U.S.C. § 1461, *et seq.*

4. Section 402(j) of the NHA, 12 U.S.C. § 1725(j), provides in pertinent part:
 (j)(1) Except as otherwise provided in this subsection, until June 30, 1976, the Corporation shall not approve, under regulations adopted pursuant to this subchapter or section 1464 of this title, by order or otherwise, a conversion from the mutual to stock form of organization involving or to involve an insured institution, except that this sentence shall not be deemed to limit now or hereafter the authority of the Corporation to approve conversions in supervisory cases. The Corporation may by rule, regulation, or otherwise and under such civil penalties (which may be cumulative to any other remedies) as it may prescribe take whatever action it deems necessary or appropriate to implement or enforce this subsection.
 (2) The number of applications for conversion which the Corporation may approve pursuant to such regulations prior to such date shall be determined by the Corporation but shall not in any case be in excess of 1 per centum of the total number of all insured institutions in existence on the date of enactment, exclusive of the number of applications submitted for filing prior to May 22, 1973.
 * * *

Bank Board authority to approve conversions of federal mutual to *federal* stock associations. Section 402(j)(1), however, placed a temporary moratorium on the exercise of conversion authority to give the FHLBB time to revise and promulgate regulations governing all conversions. The final conversion statute, Public Law 93–495, enacted in 1974, continued the existing moratorium on all conversions until June 30, 1976, with the exception of fifty-one test cases. Petitioner contends that § 402(j)(3), which gave the FHLBB power to grant conversions, also terminated on June 30, 1976. Respondents, on the contrary, argue that it was only the temporary moratorium on conversions which expired on that date.

## I

■ The principal issue requires that we construe § 402(j) of the NHA, since the FHLBB's authority to approve conversions from mutual to stock organizations depends upon whether 402(j) expired in its entirety on June 30, 1976, or only the temporary limitation on conversions terminated. If the entire section lapsed on June 30, 1976, as petitioner contends, the FHLBB had no authority to approve the conversion. If, however, 402(j) remains in effect, the Bank Board is empowered to authorize savings and loans to convert while retaining their federal charters.[5]

A reading of the statute indicates that, except for the moratorium on conversions, the provisions of Section 402(j) are designed to be permanent. The statute provides that "until June 30, 1976, the [Board] shall not approve [additional conversions]," and this phraseology, by its terms, restricts only the

number of conversions the FHLBB could approve during the period prior to June 30, 1976. After that date, it would appear that the Bank Board is authorized to grant conversions, subject only to the remaining provisions of Section 402(j) and the applicable regulations.

Any ambiguity in the statute is resolved by the legislative history of § 402(j). The section is a combination of Public Laws 93–100 and 93–495 and the history of both statutes demonstrates that only the moratorium was meant to be temporary. Public Law 93–100 was to provide for a "temporary prohibition" on FHLBB approved conversions. S.Rep. No. 93–149; *reprinted in* [1973] U.S.Code Cong. & Admin.News pp. 2014, 2016. This temporary prohibition was designed to give the Bank Board time to formulate new regulations for the approval of conversions. *Id.*, at 2017. The legislative history of Public Law 93–495, which extended the moratorium an additional two years until June 30, 1976, is also instructive as to the congressional intent to temporarily limit the Bank Board's power to grant conversions, except for a series of test cases to be studied by the Board and Congress. The Senate Report on this most recent amendment indicates that only "[t]he moratorium on conversions * * * is continued for 2 years until June 30, 1976." S.Rep. No. 93–902; *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6119, 6121. The sole permissible inference from this statement is that Congress recognized that only the limitation on the Bank Board's authority would lapse, not the authority itself.

■ Furthermore, since June 30, 1976, the FHLBB has approved thirty-seven addi-

---

(3) Notwithstanding any other provision of law, an insured institution converting in accordance with this subsection may retain its Federal charter. * * *

(4) Any aggrieved person may obtain review of a final action of the Federal Home Loan Bank Board or the Corporation which approves, with or without conditions, or disapproves a plan of conversion pursuant to this subsection only by complying with the provisions of subsection (k) of section 1730a of this title within the time limit and in the manner therein prescribed, * * *.

(5) The Corporation shall, at least annually and more often as circumstances require, render reports to the Congress on the exercise of its authority under this subsection.

5. Under 12 U.S.C. § 1464(i) a federally chartered mutual savings and loan association can convert, with Bank Board approval, to a state stock association. This conversion would require the association to forfeit its federal charter.

tional conversions from mutual to stock organizations. Congress has been apprised of these approvals in the FHLBB's yearly reports to the House and Senate Banking Committees.[6] We agree with the respondents that by declining to act despite the Bank Board's known policy of continuing conversions, Congress has tacitly approved the FHLBB's action. As the Supreme Court reasoned in *Ford Motor Credit Co. v. Milhollin*, —— U.S. ——, ——, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980), "(L)egislative silence * * * may * * * betoken permission or, perhaps, considered abstention from regulation." While congressional inaction alone is not controlling, it is certainly persuasive.

 Moreover, we are cognizant of the "considerable respect" which is to be accorded an agency's construction of the statute it is authorized to enforce. *Ford Motor Credit Co. v. Milhollin, supra,* —— U.S. at ——, 100 S.Ct. at 797. As the Court explained in *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' (Citations omitted.)

This deference to agency interpretations is especially appropriate here where Congress has stated that the FHLBB should be given broad "flexibility" in implementing and construing § 402(j). S.Rep.No. 93–902; *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 6119, 6122.

The plain language of the statute, the legislative history and the agency interpretation convinces us that the FHLBB's authority to approve conversions from mutual to stock organizations did not expire on June 30, 1976. A contrary interpretation of § 402(j) would not halt conversions, but would merely compel federally chartered mutuals to convert to state stock associations. This, in our opinion, would weaken the federal system and ignore a stated legislative goal of § 402(j).[7]

II

 Petitioner secondly contends that even if the FHLBB is authorized to grant conversions, approval of First Federal's request was arbitrary and capricious. Petitioner argues that the proposed conversion would deprive First Federal depositors of their property rights in the association while providing windfalls to those purchasing conversion stock in the savings and loan. We are of the opinion, however, that approval of First Federal's conversion was well within the broad discretion of the FHLBB.[8]

 Although the depositors are the legal "owners" of a mutual savings and loan association, their interest is essentially that of creditors of the association and only sec-

---

6. In a report to the Senate Banking Committee issued on July 8, 1977, the Comptroller General of the United States stated that the FHLBB's power to approve conversions lapsed on June 30, 1976. Petitioner places great reliance on this opinion; however, the Comptroller General serves merely as a Congressional fact finder and his opinions have no independent legal significance. It is noteworthy that Congress received this opinion three years ago and has taken no action to implement its findings.

7. Preventing the erosion of the federal savings and loan system was a major purpose behind the passage of § 407(j). S.Rep. No. 93–149; *reprinted in* [1973] U.S.Code Cong. & Admin.

News, pp. 2014, 2017. By allowing federal mutuals to convert to federal stock associations the statute obviates the need to convert to state chartered associations.

8. Although we find petitioner's charge that the Bank Board abused its discretion to be without merit, we suggest, in any event, the proper forum for addressing these contentions is the Congress. Petitioner's objections are not peculiar to First Federal's conversions, but are aimed at the inherent nature of conversions of any kind. As such, these policy arguments are more suitably addressed to a legislative body.

ondarily as equity owners. Depositors' rights are circumscribed by statute and regulation. They are not allowed to realize or share in profits of the association, but are entitled only to an established rate of interest. The depositors do not share in the risk of loss since their deposits are federally insured, and their only opportunity to realize a gain of any kind would be in the event the savings and loan association dissolved or liquidated. As to this remote possibility the Supreme Court stated:

> If a depositor withdraws from the bank, he receives only his deposits and interest. If he continues, his only chance of getting anything more would be in the unlikely event of a solvent liquidation, a possibility that hardly arises to the level of an expectancy. It stretches the imagination very far to attribute any real value to such a remote contingency, and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point. (Citations omitted.)

*Society for Savings v. Bowers,* 349 U.S. 143, 150, 75 S.Ct. 607, 611, 99 L.Ed. 950 (1955). In fact, federal regulations prohibit savings and loans from dissolving without Bank Board approval,[9] and no solvent association has ever secured approval for dissolution. Thus, it is apparent that depositors will not be deprived of property rights by conversion to a federal stock organization. Depositors' only actual rights, their rights as creditors of the association, will remain unchanged by the conversion.[10]

Petitioner finally submits that First Federal's conversion will result in a windfall for those purchasing stock in the association. Petitioner is under the mistaken belief that by purchasing stock in the converted association, the shareholder is buying the existing net worth of the savings and loan. The shareholders, however, do not acquire a right to dispose of the association's net worth, but only purchase the right to par-

ticipate in future earnings of the savings and loan. Depositors still retain absolute control over their accounts in the association. These funds are not purchased by the new stockholders and remain with the association only for so long as the depositors wish.

We conclude that the approval of First Federal's conversion was within the discretion of the Bank Board, and was neither arbitrary nor capricious. Accordingly, the determination of the Federal Home Loan Bank Board is affirmed.

*AFFIRMED.*

refusal to purchase stock equal to their percentage of ownership in the mutual association.

---

**9.** 12 C.F.R. § 546.4.

**10.** Under Bank Board regulations depositors in the savings and loan also have the right of first