Harold T. and Marie T. PAULSEN,
Appellees,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellant.

No. 82–7329.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1983.

Decided Aug. 16, 1983.

Duane Tewell, Seattle, Wash., Karen S. Bryan, Latham & Watkins, Los Angeles, Cal., for appellees.

Jonathan Cohen, Washington, D.C., for appellant.

Before HUG, POOLE and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Pursuant to a merger plan between a stock savings and loan association and a mutual savings and loan association, shareholders in the stock association exchanged their "guaranty shares" for passbook accounts and time certificates of deposit in the mutual association. The Tax Court, believing that it was "constrained to follow the guidelines of several circuit court decisions holding [transactions such as this one to be tax free]," held the exchange to be a stock for stock transaction not taxable under 26 U.S.C. § 354. *Paulsen v. Commissioner,* 78 T.C. 291, 302–303, 303 n. 24 (1982).

On appeal, the Government argues that the predominant characteristics of the passbook accounts and time certificates received in the exchange are those of debt rather than those of equity, and that, in reality, the shareholders simply sold their guaranty shares for the equivalent of cash. We agree and therefore reverse.

## I

The material facts are not in dispute.

Commerce Savings and Loan Association (Commerce) was a stock savings and loan association chartered by the State of Washington and authorized to issue guaranty stock, to offer various classes of savings accounts, and to make loans. Each holder of a savings account, or of guaranty stock, and each borrower was a "member" of Commerce. With regard to matters requiring the approval of Commerce's members, holders of guaranty stock were entitled to one vote per share, holders of savings accounts to one vote per $100 on deposit, and borrowers to one vote each.

A certain amount of guaranty stock was "nonwithdrawable" and constituted the fixed capital of Commerce. Under state law, only holders of guaranty stock had a proprietary interest in the assets and net earnings of Commerce. Guaranty stockholders were entitled to elect a majority of Commerce's board of directors.

Harold T. Paulsen was president and a director of Commerce. On June 30, 1976, he and his wife owned 17,459 shares of Commerce guaranty stock with a cash basis of $56,802.

Citizens Federal Savings and Loan Association (Citizens) is a federally chartered mutual savings and loan association. As a mutual savings and loan association, it has no capital stock. Instead, it is "owned" by its depositors. With regard to matters on which management must obtain approval, each holder of a savings account is entitled to one vote per $100 on deposit (or fraction thereof), up to a maximum of 400 votes. Each borrower from Citizens is also entitled to one vote.

Citizens' articles and bylaws provide that twice each year Citizens' net earnings and any surplus are to be distributed to savings account holders on a pro rata basis. In the event of the liquidation or dissolution of Citizens, savings account holders are entitled to a pro rata distribution of its assets. Citizens must also honor requests by its savings account holders to withdraw funds within thirty days. Citizens may "redeem" any of its savings accounts at any time by paying to the holder the "withdrawal amount", i.e., the amount on deposit.

On July 1, 1976, Commerce was merged into Citizens. Under the merger plan, shareholders of Commerce were to exchange their guaranty shares for passbook accounts and time certificates of deposit in Citizens. Each guaranty share of Commerce was to be exchanged for a $12 depos-it in a Citizens passbook account, subject to the restriction that such deposits could not be withdrawn for one year. Alternatively, Commerce shareholders could exchange their guaranty stock for time certificates of deposit in Citizens with maturities ranging from one to ten years, again at the rate of $12 per share. Although under either option former Commerce shareholders would not receive cash immediately, the merger plan authorized them to borrow against such accounts at an interest rate of 1.5 percent above the passbook rate. Normally, Citizens savings account holders could borrow at a rate of 2 percent higher than the passbook rate.

On July 1, 1976, the Paulsens exchanged their 17,459 shares of Commerce guaranty stock for passbook accounts and certificates of deposit as follows:

| Number of Shares | Date of Acquisition | Cost Basis | Consideration Received Amount | Type | Gain Realized |
|---|---|---|---|---|---|
| 3,356 | 3/ 8/63 | $7,500 | $40,272 | Passbook | $32,772 |
| 3,359 | 6/26/70 | 7,500 | 40,308 | 2 yr. cert. | 32,808 |
| 3,358 | 12/31/71 | 7,500 | 40,269 | 18 mos. cert. | 32,796 |
| 3,358 | 10/24/72 | 7,500 | 40,296 | 18 mos. cert. | 32,796 |
| 667 | 1/ 1/73 | 7,530 | 8,004 | 1 yr. cert. | 474 |
| 1,971 | 2/19/74 | 6,000 | 23,652 | 3 yr. cert. | 17,652 |
| 861 | 6/30/76 | 7,500 | 10,332 | 3 yr. cert. | 2,832 |
| 529 | 6/30/76 | 5,772 | 6,348 | 4 yr. cert. | 576 |
| 17,459 | | $56,802 | $209,508 | | $152,706 |

The Paulsens determined that the merger was a reorganization as described in § 368(a)(1) and that their gain from the transaction was tax free under § 354(a). They therefore did not report the gain on their 1976 income tax return.

The Commissioner issued a statutory notice of deficiency, asserting that the Paulsens were liable for tax on the entire amount. The Paulsens petitioned the Tax Court for a redetermination of deficiency. The Tax Court held that the passbook accounts and the time certificates of deposit were to be classified as stock for purposes of § 354 and that the exchange was therefore not taxable. 78 T.C. at 303. The Commissioner filed a timely appeal.

II

In general, all gain from the sale or exchange of property is taxable unless exempted by a specific provision of the Code. 26 U.S.C. § 1001. Section 354 is such a provision. It states in part that:

No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

26 U.S.C. § 354(a)(1).

Describing the purpose of § 354, one commentator has written:

The theory behind [§ 354] is that where a stockholder enters into a reorganization exchange (e.g. a merger), he receives stock of a different corporation from that in which he held stock before, thereby realizing gain. However, since his investment is still tied up in the corporate form, economically he is not very much better off than he was before—for example, he still has no money with which to pay the tax—and consequently, as a matter of congressional policy, gains are not recognized at this point. Instead, through the carryover basis provisions, taxation of gain on this exchange is postponed until he disposes of the stock received in the merger in some form of taxable exchange.

Stanley & Kilcullen, *Federal Income Tax Law* 7–8 (1983).

■ Section 354 applies only when "stock or securities" are exchanged for like property pursuant to a plan of "reorganization". To ensure that the purpose of § 354 is met, courts have added to the definition of reorganization a "continuity of interest" requirement, which in the case of statutory mergers is satisfied only if the equity interest of the shareholders in the acquiring enterprise is continued in the new enterprise. *See Home Savings and Loan Ass'n v. United States,* 514 F.2d 1199, 1201 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 386 (1975); B. Bittker and J. Eustace, *Federal Income Taxation of Corporations and Shareholders,* para. 14.11 (4th ed. 1979).

■ The interest received need not be the same form of equity interest as that given up. *Helvering v. Minnesota Tea Co.,* 296 U.S. 378, 386, 56 S.Ct. 269, 272, 80 L.Ed. 284 (1935). Furthermore, the transferor may receive some cash or other property, as long as he or she receives in addition an equity interest in the acquiring corporation that represents a substantial part of the value of the interest given up. *Nelson Co. v. Helvering,* 296 U.S. 374, 377, 56 S.Ct. 273, 274, 80 L.Ed. 281 (1935). The "continuity of interest" requirement is not satisfied, however, if the transferor of shares in the ac-

quired corporation receives only debt and becomes merely a creditor of the new enterprise. *See* B. Bittker and J. Eustace, *supra; see also Le Tulle v. Scofield,* 308 U.S. 415, 60 S.Ct. 313, 84 L.Ed. 355 (1940).

In the discussion that follows, we consider first whether the accounts received by the Paulsens should be characterized as equity, in which case nonrecognition of gain would be appropriate, or as debt, in which case recognition is required. We conclude that the debt characteristics overwhelmingly predominate.

## III

The Paulsens argue that they exchanged their guaranty shares in Commerce for interests in Citizens that too had significant proprietary characteristics. First, they contend, their interests should be considered equity for purposes of section 354 because as holders of Citizens accounts they are entitled to all the rights generally held by shareholders, including the right to vote, the right to share in the profits of the association, and the right to share in any proceeds that may be available should Citizens liquidate. Second, they point out that under the Code stock is defined to include "shares in an association," 26 U.S.C. § 7701(a)(7), and shareholder is defined to include "member of an association," 26 U.S.C. § 7701(a)(8). Third, the Paulsens argue that Citizens biannual distributions of earnings are "dividends." They note that under Citizens' charter management is authorized to determine periodically whether any payments are to be made, and their amount; that the payments are expressly dependent on the financial success of the Association; and that Citizens is not contractually obligated to its depositors to make any payments. This too, they argue, is typical of equity. Finally, the Paulsens note that the interests they received, passbook accounts and certificates of deposit, are the only form of proprietary interest available in Citizens. Thus, regardless of any debt characteristics the instruments they received may have, they argue, they received all of the equity there was to re-

ceive. In short, the Paulsens suggest that to hold that their interests are not equity would be to hold that no equity exists in Citizens at all.

The arguments advanced by the Paulsens are virtually identical to those made by the plaintiff in *Home Savings and Loan Association v. United States,* 514 F.2d 1199 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 386 (1975). In that case, plaintiff *Home Savings,* a stock savings and loan association, had acquired the stock of Pasadena Savings and Loan Association (Pasadena) and Savings and Loan Association of Anaheim (Anaheim). Each of the two acquired associations had two forms of capital. Both had guarantee stock, the proceeds of which were required by California law to be set aside and maintained "as a fixed and permanent capital of the association." *Id.* at 1202. In addition, Pasadena had withdrawable shares, which enjoyed no statutory entitlement to interest, were liable for debts or assessments of the corporation, and were subordinated to the interests of creditors in the event of a liquidation. Anaheim, on the other hand, had investment certificates which, in contrast to withdrawable shares, had a statutory right to interest, were not liable for corporate debts or assessments, and had priority in a liquidation. *Id.* at 1202–03. The acquisition by Home was effected by Home purchasing the guarantee shares of the two associations and exchanging its withdrawable shares for the withdrawable shares of Pasadena and the investment certificates of Anaheim. The question before the court was whether that transaction more nearly resembled a stock purchase than a tax-free reorganization. The answer to that question depended on whether the withdrawable shares and investment certificates were classified as debt or as equity.

■ To make that determination, the *Home Savings* panel carefully examined the characteristics of the interests Home acquired from Pasadena and Anaheim, and concluded that

[n]either withdrawable shares nor investment certificates under the circumstances of this case partake sufficiently of equity characteristics to permit their classification as such.

*Id.* at 1206. We conduct the same examination of the interests acquired in the Citizens merger, comparing them to those found to be debt in *Home Savings.* Our examination compels the conclusion that, like the interests acquired in *Home Savings,* the interests we must classify in this case do not "partake sufficiently of equity characteristics," *id.* to so classify them.

First, there are indeed some voting rights attached to the Citizens passbook accounts. Yet as we noted in *Home Savings,* under California law holders of debt can be afforded voting rights. 514 F.2d at 1206; Cal.Corp.Code § 306. Thus the fact that voting rights are attached to a particular interest does not make it equity. Moreover, the voting rights received by Citizens depositors are quite dissimilar to those of holders of equity interest in other corporations. Every holder of a Citizens savings account is entitled to one vote per $100 on deposit (up to a maximum of 400 votes). Yet the Paulsens' proportional ownership and their voting power are, unlike that of shareholders in other entities, infinitely dilutable. The addition of any depositor dilutes the voting power of all. Finally, the Paulsens have not refuted the Commissioner's contention that in practice depositors generally sign proxies giving management their vote upon opening accounts. *See York v. Federal Home Loan Bank Board,* 624 F.2d 495, 497 n. 1 (4th Cir.), *cert. denied,* 449 U.S. 1043, 101 S.Ct. 621, 66 L.Ed.2d 504 (1980). Thus whatever formal right to vote the depositors may possess they sign away upon depositing their first dollar.

Second, though Citizens does indeed distribute what it calls "dividends," taxpayers do not dispute the Commissioner's assertion that in fact Citizens pays a fixed, preannounced rate on all accounts. In practice, the distributions are identical in all essential respects to the interest paid by stock savings and loan associations. Indeed, as a matter of economic common sense they would have to be. It is fanciful to suggest

that depositors deciding where to put their money attach any weight to whether an institution is a mutual or a stock association. Indisputably, they are motivated by the amount of interest they can receive and the security of their deposits. Thus, again as we noted in *Home Savings,* competition will "assure withdrawable shareholders a reasonably steady rate of return," and will assure that interest paid by mutual associations is competitive with interest paid by stock associations and commercial banks. 514 F.2d at 1206. Our court in *Home Savings* was also persuaded to classify the withdrawable shares and investment certificates as debt by the fact that the Internal Revenue Code treated the instruments exactly as it does interest. They were deductible to the payor, 26 U.S.C. § 591, and did not qualify for the dividend exclusion of § 116. Because the same is true of the so-called dividends paid by Citizens, we are equally persuaded that those payments do not qualify the passbook accounts as equity.

Third, the Paulsens' right to share in the proceeds in the speculative and unlikely event of a solvent liquidation cannot be considered a significant part of the value of the interest they received in exchange for their guaranty stock and thus cannot be considered as a significant factor in determining whether what they received was debt or equity. The *Home Savings* panel attached no weight to similar rights acquired by the plaintiff in that case, and the Supreme Court aptly described the significance of liquidation rights such as those received by the Paulsens in *Society for Savings v. Bowers,* 349 U.S. 143, 150, 75 S.Ct. 607, 611, 99 L.Ed. 950 (1955) when it noted that

> it stretches the imagination very far to attribute any real value to such a remote contingency [as a solvent liquidation], and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point.

Finally, the *Home Savings* panel found very persuasive the fact that the interests that *Home* received, besides being dissimilar to normal equity interests, had many of the normal characteristics of debt. The withdrawable shares and investment certificates were not subordinated to the interests of creditors and were not permanent contributions to capital. 514 F.2d at 1207. These facts hold equal sway in the case of the Citizens merger. The Paulsens' interest in Citizens is not subordinated to the interests of Citizens' creditors or to anyone else. Their deposits are not permanent contributions to the capital of Citizens but instead may be withdrawn (after one year) at will. Moreover, unlike the situation in *Home Savings,* under the Citizens merger agreement the Paulsens may borrow against their accounts at a rate even more favorable than that Citizens charges its other account holders. These factors persuade us, as they did our court in *Home Savings,* that the Citizens accounts are essentially the equivalent of cash.

Thus, were the interests acquired by the Paulsens identical to the withdrawable shares and investment certificates acquired by Home Savings, we would have no trouble whatsoever concluding that they should be classified as debt. The Paulsens point out, however, that their interests, unlike those at issue in *Home Savings,* are the only form of capital in the association. In *Home Savings,* Pasadena and Anaheim both had guarantee stock in their capital structure in addition to the withdrawable shares. Citizens, however, has no such stock. Its only owners are the depositors. This difference, the Paulsens claim, is critical. They make two arguments. First, they point out, the *Home Savings* panel stated that it "might be willing to weigh more heavily . . . (the) equity-like features (of the withdrawable shares and investment certificates) were there no greater equity-like interests involved." 514 F.2d at 1206. Second, they argue that to hold the passbook accounts are debt would be to hold that no capital exists in Citizens at all, which, they claim, is of course not correct.

We find both arguments without merit. Though the *Home Savings* panel did indicate that it might be persuaded to clas-

sify the withdrawable shares and investment certificates as equity were they the only interests in existence, they were not. Thus the language cited by the Paulsens is dictum, and we have no reason to believe that the *Home Savings* panel ever seriously considered the question of what weight to give the fact that a particular interest is the only ownership interest in an association. Second, the Paulsens' argument simply misses the point. The argument that the passbook accounts are the only equity in Citizens and thus must be classified as equity for purposes of § 354 confuses the viewpoint of the corporation with that of the individual taxpayer. From the Association's point of view, there can be little doubt that the passbook accounts are equity in the sense that they represent the entire capital structure of the Association. This strikes us as irrelevant, however, as far as § 354 is concerned. The focus of that section is on the character of the interests received from the point of view of the taxpayer, not that of the corporation. The critical question for purposes of § 354 is whether the position of the shareholder in the reorganized entity has really changed: has his risk increased or decreased? is his investment more or less liquid? If the position of the shareholder has changed to that of a creditor with ready access to his money then, regardless of the nature of his interests from the corporation's point of view, those interests cannot qualify as stock for purposes of § 354.

This is exactly what has happened in this case. Here, the Paulsens have exchanged their guaranty shares for passbook accounts and time certificates of deposit that, despite certain formal equity characteristics, are in reality indistinguishable from ordinary savings accounts and are essentially the equivalent of cash. They have converted a risky investment into a risk-free one and a highly illiquid position into a highly liquid one. We see no reason why, under these circumstances, the gain they experienced by doing so should not be recognized.

This analysis finds support in *York v. Federal Home Loan Bank Board,* 624 F.2d 495 (4th Cir.1980). There, the Fourth Circuit was faced with the argument that the conversion of a mutual association into a stock savings and loan association had deprived depositors in the mutual of valuable property rights in the association in the form of rights to vote and to share in the proceeds of any liquidation. Those rights were similar to those possessed by holders of Citizens passbook accounts and, in *York* too, the depositors argued that their interests had to be considered equity because they were the legal owners of the association. The Court, however, held that the interests of depositors had so little value as equity that they did not rise to the status of property rights. The court noted that

> [a]lthough the depositors are the legal "owners" of a mutual savings and loan, their interest is essentially that of creditors of the association and only secondarily as equity owners.

*Id.* at 499–500.

Thus, the Fourth Circuit held, the conversion of the mutual to a stock association would not deprive depositors of property rights because their "only actual rights, their rights as creditors of the association, will remain unchanged by the conversion." *Id.* at 500.

## IV

We recognize that our decision conflicts with that reached by several other courts. In *Capital Savings and Loan Association v. United States,* 607 F.2d 970, 221 Ct.Cl. 557 (1979), the court held that a merger similar to that here, in which guaranty shareholders exchanged their shares for savings accounts in the acquiring mutual savings and loan association, was a tax-free reorganization. The court emphasized that savings accounts were the only form of equity in mutual associations. It stated that to conclude that such accounts constituted debt would be tantamount to saying that mutual savings and loan associations have no owners. Similar results were reached in *West Side Federal Savings and Loan Association v. United States,* 494 F.2d 404 (6th Cir.1974), and in *Everett v. United States,* 448 F.2d 357 (10th Cir.1971).

We are neither bound nor persuaded by those authorities. As noted above, we do not hold that a mutual savings and loan association is without owners. We merely hold that the interests at issue here, though they may be ownership interests for some purposes, do not "partake sufficiently of equity characteristics" to qualify this transaction as a tax free reorganization.[1]

REVERSED.

---

**1.** Though we do not assign the argument much weight, we agree with the Commissioner that serious administrative difficulties would result were we to affirm the Tax Court. The Paulsens would have in their passbook account and in each of seven separate time certificates a cash basis less than the actual dollar amount on deposit. Determining and taxing the gain each time a withdrawal is made would produce substantial accounting and administrative problems.